IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PAULA K. PRIESMEYER,       )<br>                                              )<br>         Plaintiff,                        )<br>                                              )<br>v.                                           )     Case No. 07-04233-CV-C-NKL-SSA<br>                                              )<br>MICHAEL J. ASTRUE,              )<br>Commissioner of Social Security,  )<br>                                              )<br>         Defendant.                     ) | |

**O R D E R**

Plaintiff Paula K. Priesmeyer ("Priesmeyer") challenges the Social Security Commissioner's ("Commissioner") denial of her application for disability and disability insurance benefits under Titles II and XVI of the Social Security Act, as amended ("the Act"). Priesmeyer has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Priesmeyer argues, in part, that the record does not support the Administrative Law Judge's ("ALJ") finding that she was not under a disability because the ALJ erred in failing to find that Priesmeyer met listing 1.04A of 20 C.F.R. pt. 404, subpt. P, app. 1. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] For the reasons stated herein, the Court reverses the ALJ's decision and remands for further consideration consistent with this order.

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

**I.     Factual History**

Priesmeyer was born on January 17, 1963 and was 44 years old at the time of her hearing before the ALJ. She had a 10th grade education, and had worked in the past as a nurse's aide, factory laborer, motel housekeeper, and printer.

On January 24, 2004, Priesmeyer's alleged onset date, she was injured while working as a motel housekeeper. She visited the emergency room due to her pain on January 29, 2004, and received a Demerol injection. When the injection provided her no relief, she returned to the emergency room the next day and received Morphine, which provided temporary relief.

Priesmeyer was examined at Sun Lakes Rehabilitation for physical therapy purposes on February 9, 2004. She stated that her pain had increased by that time, occurred with sitting or standing, and was keeping her awake at night. The examination records note that she was unable to sit, stand, or lie down for prolonged periods. Priesmeyer reported a pain level of 9 on a scale of 0 to 10.

On February 11, 2004, Priesmeyer was examined by Dr. Theodore Beltz, D.O., at the Truman Lake Clinic. Dr. Beltz's diagnosis was low back pain following a fall, and a probable strain. His examination showed sensitivity and stiffness in the lower back. Priesmeyer continued to report difficulty sitting and had to frequently stand and move about. Dr. Beltz noted a history of depression, and continued Preismeyer on Prozac. He also continued her on Hydrocodone.

On February 24, 2004, Priesmeyer consulted spine surgeon Dr. David Ebelke, M.D. Dr. Ebelke noted Priesmeyer had an antalgic gait favoring her left leg, a fair ability to toe and heel walk, and guarded range of motion. A supine straight leg raising test was positive, although a seated straight leg raising test was normal. Dr. Ebelke noted that an MRI performed a week earlier showed some abnormalities at L5-S1 and L4-L5. At L5-S1, a central to left disc protrusion or extrusion mildly touched or displaced the left nerve root. Dr. Ebelke predicted that epidural injections would be difficult because of Priesmeyer's obesity, and stated that they should be attempted only with fluoroscopic control. He prescribed Vioxx, Skelaxin, and Darvocet. He recommended Priesmeyer limit herself to light duty, and recommended conservative treatment due to her negative neurological examination, the absence of radicular pain extending throughout a leg, and her obesity.

Priesmeyer returned to physical therapy on March 31, 2004. She reported spasms with left-sided back pain radiating down her left leg to her knee and ankle. She demonstrated a pelvic tilt and was tender with limited range of motion of the lumbar spine. A straight leg raising test was positive.

While undergoing therapy, Priesmeyer reported various difficulties. She reported on April 8, 2004 that she had experienced pain during the night which she estimated at 8 on a 0 to 10 scale. Two days later, she reported not sleeping well as a consequence of her pain. Two days after that, she described her pain as unbearable, and complained of burning sensations. By April 21, 2004, Priesmeyer's reported that her lower back pain was constant and severe. Activity increased her pain, and her pain interfered with sleep. Examination

3

showed tenderness with limited range of motion. She reported that her pain level remained at an 8 on a 0 to 10 scale. Priesmeyer was described as making some progress.

Dr. Ebelke examined Priesmeyer again while she was undergoing physical therapy. On April 23, 2004, she reported quitting her job because she had only been able to work about two hours daily as a result of her pain. Neurontin had caused her headaches. She complained of pain in her left ankle, knee, and lower back with some burning sensations and a pain level ranging from 7 to 8 on a 0 to 10 scale. Reflexes in her ankle were decreased, but symmetrical. A straight leg raising test was mildly positive on the left. Vioxx upset her stomach, so Dr. Ebelke prescribed Celebrex instead.

Priesmeyer continued physical therapy into May. She continued to report severe pain in her lower back, and began to report decreasing sensation into her left leg. Despite physical therapy she did not obtain relief and her lower back pain. The pain radiated into her left leg and continued to keep her awake at night. Priesmeyer reported that she could not find any position to relieve her pain, which she rated a 7 on a 0 to 10 scale. Dr. Ebelke noted poor posture as a result of her obesity and an anterior pelvic tilt.

In June 2004, Dr. Ebelke concluded that Priesmeyer was not improving. Her weight was 285 pounds at that point. Ankle reflexes were diminished, although symmetrical, and a straight leg raising test was mildly positive on the left. Dr. Ebelke diagnosed her with a possible small herniated disc at L5-S1 and scheduled further assessments. Dr. Ebelke performed a lumbar myelogram, which required the use of a large needle because of Priesmeyer's "very large size." The CT post myelogram confirmed a large herniated disc at

4

L5-S1 on the left with a root sleeve that was "partially deformed and amputated." Dr. Ebelke recommended surgery given the fact that the herniation was compressing the root laterally with indentation of the central fecal sac. He noted that he would have to use a Syn frame retractor, and that the operation would likely take longer as a consequence of her size. He noted that the risk of recurrent herniation was 15% to 20% or greater because of Priesmeyer's obesity and smoking history. He did not expect surgery to eliminate all pain.

Dr. Ebelke performed an L5-S1 laminectomy and microdiskectomy for a herniated disc at L5-S1 on June 23, 2004. he described the surgery as "unusually difficult" due to Priesmeyer's obesity, noting that it had lasted almost two hours due to her large size and the limitation of the retractors.

After surgery, the radiating leg pain was resolved, but new numbness appeared in the left S1 distribution. Two weeks later, Priesmeyer was again seen at Truman Lake Clinic with complaints of swelling in her legs and ankles. She reported chronic pain, cramping in her left leg, and edema. She was advised to increase her walking and lose weight.

During a post-surgery visit with Dr. Ebelke, Priesmeyer reported that she had done well initially following surgery, but that about a week afterwards, pain had returned in her left leg, accompanied by numbness and tingling. While her back had improved, pain in the left leg and buttocks, along with cramping, had worsened. Her weight had increased to 289 pounds and she was advised that this was increasing the strain on her back. Left ankle reflex was only a trace at this point. A left straight leg raising test was "somewhat tight," but not obviously abnormal.

5

Dr. Ebelke advised Priesmeyer to stay off work. About two weeks later, he again found a diminished left ankle reflex and Priesmeyer complained of pain in her left buttock and leg, which she rated from a 5 to a 10 on a 0 to 10 scale. She reported she had difficulty sitting, consistent with post surgical directions to limit sitting.

Priesmeyer's complaints of pain in her left buttock and leg continued six weeks after surgery. Although Vioxx upset her stomach, she agreed to try it again. Left ankle reflex was still trace to absent and a left straight leg raising test was somewhat positive. Dr. Ebelke diagnosed her with postlaminectomy syndrome with greater than usual post-surgical pain. Because of her large size, Dr. Ebelke recommended against aggressively pushing physical therapy, and recommended that Priesmeyer remain off work.

By August 23, 2004, Priesmeyer's complaints of pain included her left lower back, left buttock, thigh, and calf. She rated her pain at 7 to 10 on a 0 to 10 scale, although Dr. Ebelke thought she appeared comfortable during a physical exam. Priesmeyer reported that spasms at night had continued. She stated that her pain was exacerbated with prolonged standing or sitting, and reported that Vioxx had not helped. Her left ankle reflex was still reduced.

An MRI on September 4, 2004 found endplate narrow degenerative changes and epidural fibrosis on the left side at L5-S1. Dr. Ebelke noted that the latter seemed "to envelop[] the left S1 nerve root." He found No evidence of herniation. Upon reviewing the MRI, he did not recommend further surgery.

In September 2004, Priesmeyer again participated in physical therapy. She had decreased lumbar range of motion, poor endurance and decreased left leg strength. As a result of the therapy, she experienced a 20% improvement, but her back, left buttock, and knee pain continued. Range of motion of the lumbar spine was still moderately restricted. The therapist concluded that she "ha[d] made mild progress in her strength, endurance and function and the nerve roots seem[ed] to be less irritable, but she still ha[d] pain. She ha[d] been consistent in keeping her [appointments] and pleasant and cooperative throughout her therapy."

Dr. Ebelke saw Priesmeyer for the final time on October 5, 2004 and reported continuing complaints of pain, perhaps worsening with weather changes. Although motor strength was full, left ankle reflex was still trace to absent. He decided Priesmeyer had reached maximum medical improvement and assessed her as having a permanent partial disability rating of 10%. At that time he advised her to limit lifting to 25 to 35 pounds occasionally and to avoid repetitive or frequent bending, stooping, and twisting. She was again advised to lose weight and stop smoking.

Treatment continued at the Truman Lake Clinic and in November Priesmeyer was administered a Depomedral and Decadron injection. In early December Priesmeyer advised Dr. Beltz that she had been seen at the emergency room in November but diagnosed with chronic rather than acute impairment and treated with nonsteroidals. Celebrex did not help and she was unable to tolerate Vicodin, which interfered with her sleep. She continued to complain of back pain and insomnia. Hydroxyzine Pamoate was prescribed for anxiety and

sleep disturbance. Both Weight Watchers and Overeaters Anonymous were discussed and Bontril prescribed to help with weight loss. Another injection was administered at the end of the month.

Priesmeyer was seen by Dr. Beltz again on January 19, 2005. She complained of pruritus, which Dr. Beltz assessed as a likely Codeine reaction. She was also very fatigued, weighed 319 pounds, approaching morbid obesity, and had chronic pain following her lumbar surgery. Medications included Vicodin, Lasix, Potassium and Hydroxyzine Pamoate. Visteril did not help her itching. Priesmeyer and Dr. Beltz discussed her complications in trying to lose weight. She could not afford Weight Watchers or the appetite suppressant and was unable to exercise as a consequence of her back, knees, and weight. Darvocet was substituted for Vicodin and other medications were refilled.

On February 15, 2005, an independent medical evaluation was conducted by P. Brent Koprivica, M.D., M.P.H., who initially noted that, although Dr. Ebelke had released Priesmeyer in October 2005, she had not been able to return to work. He noted that surgery had not worked and that she had most recently been seen in the emergency room in November 2004 for severe pain. Priesmeyer reported severe burning pain in her left leg. She weighed 317 pounds. Dr. Koprivica reported that Priesmeyer was "very cooperative" and behaved consistently during both formal and informal observations. Her postural limitations were consistent with her history. Range of motion testing resulted in "severe pain." For a portion of the examination, Priesmeyer stood leaning against the examination table. Sitting was limited to short periods. Lumbar flexion was 12 degrees (normal 105 degrees), true

8

lumbar flexion was 3 degrees (normal 60 plus), hip flexion was 10 degrees (normal at least 45), and lumbar extension was 11 degrees (normal 25 or greater). Lateral flexion was mildly abnormal on the right. Supine and seated straight leg raising tests were both positive.

According to Dr. Koprivica, these tests fulfilled validity criterion. The left Achilles deep tendon reflex was absent. Further examination found weakness in left plantar flexion and found that Priesmeyer could not toe or heel walk on the left. She was unable to squat as a consequence of pain.

After his examination and a review of various diagnostic studies, Dr. Koprivica concluded Priesmeyer suffered failed back syndrome with left radicular impairments and chronic back pain resulting in "overwhelming disability." He further noted that she was not a candidate for further surgery. Dr. Koprivica noted multiple limitations. He found that Priesmeyer could occasionally lift up to 10 pounds, but only from waist level and never from the floor. Frequent or constant bending at the waist, pushing, pulling, and twisting were to be avoided. He found that Priesmeyer should avoid sustained or awkward positions of the lumbar spine, and that sitting and standing were limited to 20 minutes and walking to 30 minutes. Further, he found that Priesmeyer required the ability to alter sitting, standing, and walking as frequently as pain demanded. Dr. Koprivica opined that unless Priesmeyer responded to other treatment, she would be unable to engage in competitive work on a sustained basis.

Priesmeyer was seen again at the Truman Lake Clinic on April 4, 2005, and continued to complain of back pain. She reported that Cymbalta seemed to be affecting her urination.

9

Since urinary hesitance was one of the expected side effects of that medication, it was discontinued. Priesmeyer weighed 305 pounds and requested advice about how to continue losing weight. Her weight was mentioned as a possible cause of her back pain. The next month, she was seen for seasonal allergies, urinary incontinence, and back pain. On July 19, 2005, she received both a B-12 and an arthritis shot, Decadron and DepoMedrol.

On September 7, 2005, an MRI revealed "a large disc protrusion at the L5-S1 level." The protrusion was greater on the left than the right. Results of the MRI were discussed during an office visit about two weeks later when diagnosis remained low back pain with radiculopathy into the left leg. Priesmeyer's reported pain level varied from 6 to 10 on a 0 to 10 scale. Oxycodone was prescribed.

Priesmeyer's condition had not markedly changed by May 2006. She remained morbidly obese and suffered back pain and urinary tract infections. In August of that year she reported urinary urgency with difficulty voiding. Her back pain continued. In December,
she was again diagnosed with urinary incontinence and depression.

Obesity, urinary incontinence, and depression continued into January 2007. On February 9, 2007, she reported that she had experienced chronic back pain since January 2004. Pain with numbness extended down her left leg and into her left foot and pain had worsened since her surgery.

In February 2007, Dr. Beltz described Priesmeyer's impairments, detailing multiple abnormal findings. He assessed limitations resulting from her impairments and found her capable of less than even sedentary work.

## II.     Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

The Commissioner's regulations governing determinations of disability establish a five-step sequential evaluation process which ALJs must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520; 416.920 (2008). In the first three steps of the process, the Commissioner determines whether the claimant is engaged in substantial gainful activity, whether he or she has a medically determinable impairment that is "severe" under the meaning of the Act, and whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.*

11

An individual who meets or equals a listed impairment at step three is *per se* disabled. *Chunn v. Barnhart*, 397 F.3d 667, 671 (8th Cir. 2005); *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). Although the ALJ acknowledged that Priesmeyer suffered multiple severe impairments, including obesity and status-post back surgery, he did not engage in a specific comparison of the evidence of record to the requirements of Listing 1.04A when concluding Priesmeyer did not meet or equal that listing. Instead, he focused on the requirements of former Listing 9.09 for obesity.

Listing 1.04 requires a diagnosed disorder of the spine, such as a herniated disc, with the symptoms and other findings located in either parts A, B, or C of the listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 1.04 (2008). Part A of the listing requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Plaintiff must show she meets all the requirements of both the introductory portion of listing 1.04 as well as the specific requirements in paragraph 1.04A to establish *per se* disability at step three. *See* 20 C.F.R. § 404.1525 (2008).

Listing 1.04A initially requires a disorder of the spine comprising a nerve root or the spinal cord. Prior to surgery, Priesmeyer was diagnosed with a large herniated disc at L5-S1 and the left root sleeve was described as "partially deformed and amputated." An MRI following surgery found epidural fibrosis on the left at L5-S1, apparently enveloping the left S1 nerve root. By September 2005, a large disc protrusion was identified at L5-S1.

Nerve root compression, according to Listing 1.04A, is demonstrated by neuro-anatomic distribution of pain, limited range of motion of the spine, motor loss shown with atrophy or muscle weakness, sensory or reflex loss, and positive results in a straight leg raising tests, if the lower back is implicated. There is evidence in the record that Plaintiff satisfies these requirements.

First, there is evidence in the record of neuro-anatomic pain distribution. Following surgery, "numbness in the left S1 distribution," was found. Dr. Koprivica concluded Priesmeyer suffered failed back syndrome with left radicular complaints and chronic back pain. Dr. Beltz noted neuropathy down the left leg and chronic pain with symptoms characteristic of nerve degeneration.

Next, there is evidence of limited range of motion in the lumbar spine both before and after surgery. By the time Priesmeyer was examined by Dr. Koprivica, range of motion of the lumbar spine was significantly limited.

There is also evidence of motor loss. Muscle testing during physical therapy before surgery found lumbar flexors and the trunk pelvic elevator at minus 3 with decreased strength. Dr. Beltz, by February 2007, reported an abnormal gait, muscle weakness, and muscle atrophy. Further, the Commissioner's regulations state that the inability to walk on the heels or toes or to either squat or rise from a squatting position can be indicative of significant motor loss. 20 C.F.R. § 404, subpt P, App. 1, Rule 1.00E (2008). In February 2004, Dr. Ebelke noted an antalgic gait and a fair ability to toe or heel walk. Dr. Koprivica

13

described weak left plantar flexion and an inability to heel or toe walk on the left, and noted that Priesmeyer could not squat due to her pain.

Next, there was evidence reflex loss in Priesmeyer's left ankle, described as trace and trace to absent in the summer of 2004. Dr. Koprivica confirmed the absence of the left Achilles deep tendon reflex. Dr. Beltz also reported reflex changes.

Finally, the record indicates several positive results in straight leg raising tests. In February 2004, supine straight leg raising was positive, but seated straight leg raising was normal. In March 2004, straight leg raising was positive. When examined by Dr. Koprivica, Priesmeyer demonstrated positive supine and seated straight leg raising. Dr. Beltz also found, by February 2007, positive straight leg raising at 0 degrees on the left and 10 degrees on the right.

Priesmeyer's case for meeting or equaling the requirements of Listing 1.04A is bolstered by considering the above musculoskeletal impairments in combination with her obesity. The record before the ALJ demonstrated that Priesmeyer's obesity had exacerbated her impairments and had limited her ability to receive treatment for those impairments. Dr. Betlz noted Priesmeyer's inability to exercise was a consequence of her musculoskeletal impairments and obesity. Dr. Ebelke noted complications during surgery because of her obesity. Prior to the surgery, he noted chances of a recurrent herniation were 15% to 20% greater given her obesity and her smoking. The ALJ did not adequately consider these complications in his analysis.

14

Case 2:07-cv-04233-NKL   Document 20   Filed 10/27/08   Page 14 of 15

While the ALJ discussed Priesmeyer's obesity and its impact upon her other impairments in the context of former Listing 9.09, he did not specifically consider whether Priesmeyer's impairments met or equaled Listing 1.04A. The ALJ's opinion is not supported by substantial evidence on the record as a whole, because the ALJ did not adequately consider whether Priesmeyer's obesity, in combination with her other impairments, met or equaled Listing 1.04A.

III. Conclusion

Accordingly, it is hereby

ORDERED that Priesmeyer's Petition [Docs. ## 1, 13] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this ORDER.

s/ NANETTE K LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 27, 2008  
Jefferson City, Missouri